IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEE EUGENE ESKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-969-WKW |
| | ) | |
| DOCTOR KENNETH NICHOLS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SPECIAL REPORT AND ANSWER

Defendants, Dr. Kenneth Nichols, Southern Health Partners, Inc. ("SHP") (incorrectly designated in the Complaint as "Southern Health Partners Services"), Tina Ellis, LPN ("Nurse Ellis") and Sandra Corson, LPN ("Nurse Corson") submit their Special Report and Answer to the Court as follows:

### I.    INTRODUCTION

The plaintiff signed his Complaint on October 20, 2006 and filed same on October 27, 2006. On October 30, 2006, this Court ordered Defendants to file an Answer and Special Report concerning the factual allegations made by the plaintiff in his Complaint. Pursuant to paragraph one of the Order for Special Report, Defendants aver that there are no similar complaints against them that should be considered with this complaint.

### II.    PLAINTIFF'S ALLEGATIONS

The plaintiff alleges that these Defendants failed to provide adequate or appropriate medical attention in violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges that SHP, Nurse Ellis, Nurse Corson and Dr. Nichols

were deliberately indifferent to the plaintiff's complaints of neck and back pain arising out of a fall he suffered in his jail cell.[1]

## III.    DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the plaintiff as said allegations are untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. The plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, the plaintiff's failure to comply with the Prison Litigation Reform Act ("PLRA"), all defenses under the PLRA and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the law.

## IV.    SWORN STATEMENTS

Pursuant to Paragraph two of the Court's Order, Defendants submit the affidavits of Nurse Ellis (Exhibit 1), Nurse Corson (Exhibit 2) and Dr. Nichols (Exhibit 3), who are persons having knowledge of the subject matter of the Complaint.

## V.    STATEMENT OF FACTS

### A.    <u>Background</u>

1.    Dr. Nichols obtained his medical degree from UAB in 1982. From 1982 to 1985, he performed an internal medicine internship and residency at Baptist Memorial Hospital in Memphis, Tennessee. From July 1985 to the present, he has been in private practice in internal medicine in

---

[1] This statement of the plaintiff's allegations is based upon the plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendants an opportunity to answer and address those issues.

Prattville, Alabama. He is licensed by the State of Alabama as a medical doctor and has been so since 1985. Since 1997, Dr. Nichols has been the medical director of the Autauga County Jail. Since November 2005, he has been employed by Southern Health Partners, Inc. ("SHP") to be the medical director of the Autauga County Jail. (Nichols Aff. at ¶ 2.)

2.    Nurse Ellis obtained her LPN degree from Bevill State Community College in Hamilton, Alabama in December 2005. In May 2006, she became licensed by the State of Alabama as an LPN. Since May 2006, she has been employed by Southern Health Partners, Inc. ("SHP") as the medical team administrator ("MTA") for the Autauga County Jail. (Ellis Aff. at ¶ 2.)

3.    Nurse Corson obtained her LPN degree from George Wallace Community College in Selma, Alabama in 1995. She was employed as an LPN by Baptist Medical Center and Vaughn Regional Hospital in Selma, Alabama for approximately three years. She next worked at Baptist Nursing Home in Prattville, Alabama for four years. From November 2002 through August 2006, she was employed as an LPN at the Dallas County Jail. Since August 2006, she has been employed by Southern Health Partners, Inc. ("SHP") as an LPN at the Autauga County Jail. (Corson Aff. at ¶ 2.)

4.    SHP provides medical care to inmates in various jail facilities, including the Autauga County Jail. From November 2005 to the present, health care services have been provided to inmates by SHP pursuant to a contract between SHP and the Autauga County Commission. Health care in the jail is provided under the direction of a medical team administrator ("MTA") as well as a medical director. During the period complained of by the plaintiff in this action, Dr. Nichols was the medical director of the jail, and Nurse Ellis was the MTA. (Nichols Aff. at ¶ 3; Ellis Aff. at ¶ 3; Corson Aff. at ¶ 3.)

5.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (Nichols Aff. at ¶ 4; Ellis Aff. at ¶ 4; Corson Aff. at ¶ 4.)

**B.      Chronology of the plaintiff's treatment**

6.      A true and correct copy of SHP's entire medical chart on the plaintiff is attached to Nurse Ellis' affidavit as Exhibit A. (Ellis Aff. at ¶ 6.)

7.      On June 7, 2006, the plaintiff was booked into the Autauga County Jail. On June 21, 2006, Nurse Ellis performed a history and physical upon the plaintiff, noting no major medical problems. (Ellis Aff. at ¶ 7; Corson Aff. at ¶ 7; Nichols Aff. at ¶ 7.)

8.      On October 10, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of bad neck pain. He also stated that "this is my second sic slip." On the same date, Nurse Ellis saw the plaintiff and noted that he complained of neck pain from a fall he had a month ago. She saw no signs of anything broken or out of place and did not believe that an x-ray was indicated. Dr. Nichols ordered that the plaintiff receive ibuprofen 800 mgs. twice a day for two weeks pursuant to his treatment protocol. The plaintiff's October 10, 2006 inmate sick call slip is the first sick call slip that the plaintiff completed while incarcerated at the Autauga County Jail, and the medical staff had no notice of any back or neck problems by the plaintiff until receipt of same. (Ellis Aff. at ¶ 8; Corson Aff. at ¶ 8; Nichols Aff. at ¶ 8.)

9.      On October 13, 2006, the plaintiff completed an inmate sick call slip, wherein he stated that he needed to be examined by Dr. Nichols about his neck pain and asserted that his neck needed to be x-rayed. On the same date, the medical staff received a grievance form from the

4

plaintiff wherein he stated that he needed to see Dr. Nichols about his neck pain. In response to the plaintiff's complaints, Dr. Nichols saw the plaintiff on October 18, 2006. Dr. Nichols noted that the plaintiff complained of having neck pain for about a month due to a fall in his jail cell. The plaintiff complained that his neck was stiff and that he had been on Motrin (ibuprofen) for about a week and that his pain was not improved. Dr. Nichols' examination revealed that the plaintiff's neck was stiff and tender on manipulation and he assessed the plaintiff with a neck contusion. Dr. Nichols discontinued the plaintiff's prescription for Motrin (ibuprofen), and ordered that the plaintiff receive Prednisone and Robaxin for his complaints of pain. Robaxin is a muscle relaxer. (Ellis Aff. at ¶ 9; Corson Aff. at ¶ 9; Nichols Aff. at ¶ 9.)

10.    On October 21, 2006, the medical staff received a grievance by the plaintiff, wherein he complained of having pain in his neck and upper back and asserted that he needed to go to the hospital to have an MRI. He also stated that if the jail did not want to order the MRI, he would like permission for a 24 hour leave to see his own doctor. On October 24, 2006, Nurse Ellis responded to the plaintiff's grievance, stating that she had talked to Captain Nixon, who told her that Dr. Nichols would need to either refer the plaintiff to another doctor or order an MRI. Captain Nixon also told Nurse Ellis to inform the plaintiff that he could write a letter to the judge requesting leave to go see his own doctor. (Ellis Aff. at ¶ 10; Corson Aff. at ¶ 10; Nichols Aff. at ¶ 10.)

11.    On October 24, 2006, the medical staff received a grievance from the plaintiff, wherein he described the neck and back pain that he had experienced as a result of his fall in his jail cell and asked for an x-ray. (Ellis Aff. at ¶ 11; Corson Aff. at ¶ 11; Nichols Aff. at ¶ 11.)

12.    On October 26, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain from his fall. On the same date, the plaintiff was seen by Dr. Nichols, who noted that the plaintiff complained that his headaches were getting worse and that they hurt worse in the temples. The plaintiff complained of lower back and neck pain. He also complained that he was not sleeping at night and that his current medications of Prednisone and Robaxin were not working. The plaintiff's blood pressure was checked, and it read 166/88. Dr. Nichols' assessment was headache, hypertension and neck pain. Dr. Nichols ordered that the plaintiff receive an x-ray of his C spine and that he receive Elavil at night to help him sleep and Atenolol for his high blood pressure. Dr. Nichols also ordered that the plaintiff receive Percogesic for five days for his pain. (Ellis Aff. at ¶ 12; Corson Aff. at ¶ 12; Nichols Aff. at ¶ 12.)

13.    On October 26, 2006, the plaintiff received an x-ray of his cervical spine, which was interpreted by Dr. John Waldo. Dr. Waldo noted that the plaintiff had a normal lateral view of C1 through the top of C7. The x-ray was unremarkable other than Dr. Waldo noticing a mild straightening of the lordosis, which Dr. Waldo said could be secondary to muscular spasm. (Ellis Aff. at ¶ 13; Corson Aff. at ¶ 13; Nichols Aff. at ¶ 13.)

14.    On October 26, 2006, the medical staff received a grievance from the plaintiff wherein he stated that "since the x-ray showed up negative, please have the doctor order an MRI as soon as possible." On October 28, 2006, Nurse Ellis reviewed this grievance form and referenced that she would speak to Dr. Nichols about same. (Ellis Aff. at ¶ 14; Corson Aff. at ¶ 14; Nichols Aff. at ¶ 14.)

15.    On November 1, 2006, the plaintiff completed an inmate sick call slip, complaining that he was still experiencing neck and back pain and that his medication was not helping.  Marlo Oaks, RN saw the plaintiff on November 3, 2006, noting that Dr. Nichols had stated that he would review the plaintiff's chart before approving a neurologist visit. (Ellis Aff. at ¶ 15; Corson Aff. at ¶ 15; Nichols Aff. at ¶ 15.)

16.    On November 5, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain and stating that he needed to see a neurologist.  He claimed that his right leg felt numb when he lay down.  On November 6, 2006, Nurse Ellis saw the plaintiff, noting that Dr. Nichols would review the plaintiff's chart and provide a decision based on the plaintiff's prior x-ray. (Ellis Aff. at ¶ 16; Corson Aff. at ¶ 16; Nichols Aff. at ¶ 16.)

17.    On November 15, 2006, the plaintiff completed an inmate sick call slip, claiming that his back and neck were hurting and that he needed more than just medication.  Nurse Corson saw the plaintiff and noted that Dr. Nichols had written a new prescription, increasing the plaintiff's Elavil dosage and prescribing ibuprofen 800 mgs. twice a day for two weeks. (Ellis Aff. at ¶ 17; Corson Aff. at ¶ 17; Nichols Aff. at ¶ 17.)

18.    On November 27, 2006, the plaintiff completed an inmate sick call slip, complaining that something needed to be done for his neck and back pain.  The plaintiff was seen by Marlo Oaks on November 29, 2006, and placed on the list to see Dr. Nichols. (Ellis Aff. at ¶ 18; Corson Aff. at ¶ 18; Nichols Aff. at ¶ 18.)

19.    On December 2, 2006, the plaintiff complained that he needed a tooth pulled. On December 5, 2006, Nurse Ellis saw the plaintiff, noting that the plaintiff wanted to be placed on the inmate dental list, which was done. (Ellis Aff. at ¶ 19; Corson Aff. at ¶ 19; Nichols Aff. at ¶ 19.)

20.    On December 7, 2006, Dr. Nichols saw the plaintiff. The plaintiff complained that his neck still pops and cracks and that he cannot hold his head up very long. The plaintiff stated that his left shoulder hurt some and that he was resting better on the Elavil. Dr. Nichols' physical assessment was that the plaintiff's neck was tender on the left side. Dr. Nichols assessed the plaintiff with a contusion of the neck and his plan included an order for an MRI C-spine. (Ellis Aff. at ¶ 20; Corson Aff. at ¶ 20; Nichols Aff. at ¶ 20.)

21.    The plaintiff's medication administration record reflects that the plaintiff received all medication ordered for pain. (Ellis Aff. at ¶ 21; Corson Aff. at ¶ 21; Nichols Aff. at ¶ 21.)

## C.    Defendants were not deliberately indifferent to the plaintiff's medical needs.

22.    Based upon Nurse Ellis's, Nurse Corson's, and Dr. Nichols' review of the plaintiff's records, their treatment of the plaintiff and their education and training, it is their medical opinion that the plaintiff received appropriate medical and nursing care for his complaints of back and neck pain. (Ellis Aff. at ¶ 22; Corson Aff. at ¶ 22; Nichols Aff. at ¶ 22.)

23.    All necessary care provided to the plaintiff by Nurse Ellis, Nurse Corson, Dr. Nichols and the SHP medical staff was appropriate, timely and within the standard of care. (Ellis Aff. at ¶ 23; Corson Aff. at ¶ 23; Nichols Aff. at ¶ 23.)

24.    On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made. (Ellis Aff. at ¶ 24; Corson Aff. at ¶ 24; Nichols Aff. at ¶ 24.)

VI.    **LEGAL ARGUMENT**

A.    <u>The plaintiff's claims against Defendants are due to be dismissed, because the plaintiff has presented no evidence that Defendants were deliberately indifferent to a serious medical condition.</u>

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." (*Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. (*Id.* at 104.)

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such***

9

*treatment is not a federal constitutional question*") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff.  See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although the plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments."); *Bismarck v. Lang,* 206 WL1119189 (M.D. Fla. 2006) ("Whether a defendant should have used additional or different diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment.'") quoting *Adams v. Poag,* 61 F.3d 1537, 1545 (11th Cir. 1995).

In this case, there is absolutely no evidence from which a jury could find that Nurse Ellis, Nurse Corson, Dr. Nichols or the SHP medical staff acted with deliberate indifference to any serious medical need of the plaintiff.  On the contrary, the plaintiff's medical chart clearly demonstrates that all of his medical needs were addressed in a timely and appropriate fashion.  The plaintiff has received medication for his neck and back pain, and Dr. Nichols has ordered both an x-ray and an MRI of the plaintiff's cervical spine.  Dr. Nichols, Nurse Ellis and Nurse Corson have all testified that the standard of care was met by them in their treatment of the plaintiff.  The plaintiff has failed

10

to present any evidence or medical testimony rebutting this testimony and, in fact, has presented no

evidence that the treatment provided him by said Defendants was somehow indifferent to his needs.

**B.**     <u>**SHP Is Due To Be Dismissed, Because There is No Evidence that SHP Itself**</u>
<u>**Directly Caused the Violation of Any Constitutional Right Through Its Adoption**</u>
<u>**of Some Official Policy or Practice.**</u>

Precedent from the U.S. Court of Appeals for the Eleventh Circuit provides that when a

private corporation contracts with a state to perform a function traditionally within the province of

the state government, including the provision of medical services to state inmates, then that

corporation should be treated as a governmental entity and as a person acting under color of state law

within the meaning of 42 U.S.C. §1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997);

*Edwards v. Alabama Department of Corrections*, 81 F.Supp.2d 1242, 1254 (M.D. Ala. 2000).

Although the private entity operating under such circumstances is not entitled to qualified immunity,

certain special requirements for liability apply. *Edwards*, 81 F.Supp.2d at 1254-55; *McDuffie v.*

*Hopper*, 982 F.Supp. 817, 825 (M.D. Ala. 1997). Thus, in order to prove that SHP should be liable

in this case, the plaintiff would have to demonstrate that SHP itself directly caused the violation of

his constitutional rights through SHP's adoption of some official policy or practice. See, *e.g.,*

*Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978); *Gilmere v. City of Atlanta*, 774

F.2d 1495, 1502-03 (11th Cir. 1985). Plaintiff has failed to assert a specific allegation against SHP

in his complaint, and a theory of *respondeat superior* is insufficient in any event to support a §1983

claim. Therefore, even the broad assertion that SHP was generally responsible for the acts or

omissions of its medical staff would be inadequate to prove liability. For this reason, SHP is entitled

to a full and final summary judgment. See, *Monell*, 436 U.S. at 691-92; *Edwards*, 81 F.Supp.2d at

1255.

**C.** **The plaintiff's claims are barred by the Prison Litigation Reform Act for his failure to exhaust administrative remedies.**

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the plaintiff failed to exhaust all administrative remedies, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies)

## VII. REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

**A.** **Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants move this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in a light most favorable to the nonmovant,  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves*, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar*, 142 F.3d 26, 40 (1st Cir. 1998).

**B.**    **Motion for Summary Judgment**

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

_____

Daniel F. Beasley  (BEA059)
Robert N. Bailey, II  (BAI045)
Attorneys for Defendants


**OF COUNSEL:**
LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
Huntsville, AL  35801
(256) 535-1100

CERTIFICATE OF SERVICE

I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant on this the 11th day of December, 2006:

Lee Eugene Esko
Autauga Metro Jail
136 North Court Street
Prattville, AL  36067

Of Counsel

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEE EUGENE ESKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-969-WKW |
| | ) | |
| DOCTOR KENNETH NICHOLS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF TINA ELLIS, LPN

Before me, the undersigned notary public, in and for said County and State, personally appeared **Tina Ellis, LPN**, who, after first being duly sworn by me, deposes and states as follows:

1.     My name is Tina Ellis, LPN. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2.     I obtained my LPN degree from Bevill State Community College in Hamilton, Alabama in December 2005. In May 2006, I became licensed by the State of Alabama as an LPN. Since May 2006, I have been employed by Southern Health Partners, Inc. ("SHP") as the medical team administrator ("MTA") for the Autauga County Jail.

3.     SHP provides medical care to inmates in various jail facilities, including the Autauga County Jail. Health care services have been provided to inmates by SHP pursuant to a contract between SHP and the Autauga County Commission. Health care in the jail is provided under the direction of an MTA as well as a medical director. During the period complained of by the plaintiff in this action, Dr. Kenneth Nichols ("Dr. Nichols") was the medical director in the jail and I was the MTA.

4.     When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

5.     As I understand the plaintiff's Complaint, the plaintiff alleges that SHP, Dr. Nichols, Sandra Corson and myself were deliberately indifferent to the plaintiff's complaints of neck and back pain arising out of a fall he suffered in his jail cell.

6.     I have reviewed SHP's entire medical chart on the plaintiff, a true and correct copy of which is attached as Exhibit A.

7.     On June 7, 2006, the plaintiff was booked into the Autauga County Jail. On June 21, 2006, I performed a history and physical upon the plaintiff, noting no major medical problems.

8.     On October 10, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of bad neck pain. He also stated that "this is my second sic slip." On the same date, I saw the plaintiff and noted that he complained of neck pain from a fall he had a month ago. I saw no signs of anything broken or out of place and did not believe that an x-ray was indicated. Dr. Nichols ordered that the plaintiff receive ibuprofen 800 mgs. twice a day for two weeks pursuant to his treatment protocol. Upon my review of the chart, the plaintiff's October 10, 2006 inmate sick call slip is the first sick call slip that the plaintiff completed while incarcerated at the Autauga County Jail, and the medical staff had no notice of any back or neck problems by the plaintiff until receipt of same.

9.     On October 13, 2006, the plaintiff completed an inmate sick call slip, wherein he stated that he needed to be examined by Dr. Nichols about his neck pain and asserted that his neck needed to be x-rayed. On the same date, we received a grievance form from the plaintiff wherein

he stated that he needed to see Dr. Nichols about his neck pain. In response to the plaintiff's complaints, Dr. Nichols saw the plaintiff on October 18, 2006. Dr. Nichols noted that the plaintiff complained of having neck pain for about a month due to a fall in his jail cell. The plaintiff complained that his neck was stiff and that he had been on Motrin (ibuprofen) for about a week and that his pain was not improved. Dr. Nichols' examination revealed that the plaintiff's neck was stiff and tender on manipulation and he assessed the plaintiff with a neck contusion. Dr. Nichols discontinued the plaintiff's prescription for Motrin (ibuprofen), and ordered that the plaintiff receive Prednisone and Robaxin for his complaints of pain. Robaxin is a muscle relaxer.

10. On October 21, 2006, the medical staff received a grievance by the plaintiff, wherein he complained of having pain in his neck and upper back and asserted that he needed to go to the hospital to have an MRI. He also stated that if the jail did not want to order the MRI, he would like permission for a 24 hour leave to see his own doctor. On October 24, 2006, I responded to the plaintiff's grievance, stating that I had talked to Captain Nixon, who told me that Dr. Nichols would need to either refer the plaintiff to another doctor or order an MRI. Captain Nixon also told me to inform the plaintiff that he could write a letter to the judge requesting leave to go see his own doctor.

11. On October 24, 2006, the medical staff received a grievance from the plaintiff, wherein he described the neck and back pain that he had experienced as a result of his fall in his jail cell and asked for an x-ray.

12. On October 26, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain from his fall. On the same date, the plaintiff was seen by Dr. Nichols, who noted that the plaintiff complained that his headaches were getting worse and that they hurt worse in the temples. The plaintiff complained of lower back and neck pain. He also complained that he was not sleeping at night and that his current medications of Prednisone and Robaxin were not

working. The plaintiff's blood pressure was checked, and it read 166/88. Dr. Nichols' assessment was headache, hypertension and neck pain. Dr. Nichols ordered that the plaintiff receive an x-ray of his C spine and that he receive Elavil at night to help him sleep and Atenolol for his high blood pressure. Dr. Nichols also ordered that the plaintiff receive Percogesic for five days for his pain.

13.    On October 26, 2006, the plaintiff received an x-ray of his cervical spine, which was interpreted by Dr. John Waldo. Dr. Waldo noted that the plaintiff had a normal lateral view of C1 through the top of C7. The x-ray was unremarkable other than Dr. Waldo noticing a mild straightening of the lordosis, which Dr. Waldo said could be secondary to muscular spasm.

14.    On October 26, 2006, the medical staff received a grievance from the plaintiff wherein he stated that "since the x-ray showed up negative, please have the doctor order an MRI as soon as possible." On October 28, 2006, I reviewed this grievance form and referenced that I would speak to Dr. Nichols about same.

15.    On November 1, 2006, the plaintiff completed an inmate sick call slip, complaining that he was still experiencing neck and back pain and that his medication was not helping. Marlo Oaks, RN saw the plaintiff on November 3, 2006, noting that Dr. Nichols had stated that he would review the plaintiff's chart before approving a neurologist visit.

16.    On November 5, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain and stating that he needed to see a neurologist. He claimed that his right leg felt numb when he lay down. On November 6, 2006, I saw the plaintiff, noting that Dr. Nichols would review the plaintiff's chart and provide a decision based on the plaintiff's prior x-ray.

17.    On November 15, 2006, the plaintiff completed an inmate sick call slip, claiming that his back and neck were hurting and that he needed more than just medication. Sandra Corson, LPN

saw the plaintiff and noted that Dr. Nichols had written a new prescription, increasing the plaintiff's Elavil dosage and prescribing ibuprofen 800 mgs. twice a day for two weeks.

18.    On November 27, 2006, the plaintiff completed an inmate sick call slip, complaining that something needed to be done for his neck and back pain. The plaintiff was seen by Marlo Oaks on November 29, 2006, and placed on the list to see Dr. Nichols.

19.    On December 2, 2006, the plaintiff complained that he needed a tooth pulled. On December 5, 2006, I saw the plaintiff, noting that the plaintiff wanted to be placed on the inmate dental list, which was done.

20.    On December 7, 2006, Dr. Nichols saw the plaintiff. The plaintiff complained that his neck still pops and cracks and that he cannot hold his head up very long. The plaintiff stated that his left shoulder hurt some and that he was resting better on the Elavil. Dr. Nichols' physical assessment was that the plaintiff's neck was tender on the left side. Dr. Nichols assessed the plaintiff with a contusion of the neck and his plan included an order for an MRI C-spine.

21.    The plaintiff's medication administration record reflects that the plaintiff received all medication ordered for pain.

22.    Based upon my review of the plaintiff's records, my treatment of the plaintiff and my education and training, it is my medical opinion that the plaintiff received appropriate nursing care for his complaints of back and neck pain.

23.    All necessary care provided to the plaintiff by me and the SHP medical staff was appropriate, timely and within the standard of care.

24.    On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_Tina Ellis, LPN_
Tina Ellis, LPN

STATE OF ALABAMA      )
                      )
COUNTY OF _Autauga_   )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Tina Ellis, LPN whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the _11_ day of _December_, 2006.

_Robert W. _____
Notary Public
My Commission Expires: _12-7-2007_

# EXHIBIT A
# MEDICAL RECORDS

## Physician's Orders

Southern Health Partner's, Inc

Inmate Name: _Esen, Lee_

SSN: _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_

DOB: _9-27-70_

Allergies: _NKA_

Facility: _Autauga_
County
Jail

| Date: 10/10/06 | Date: |
| --- | --- |
| IBU 800mg BID x 2wks per tx protocol — JG, MTA | |
| M.D. Sig: | M.D. Sig: |
| Date: 10/18/06 | Date: |
| D/c motrin | |
| Predisone 20 mg | |
| 9 bid x | 2 days |
| M.D. Sig: | M.D. Sig: |
| Date: | Date: |
| 1½ bid x 2 d. | |
| 1 bid x 2 d. | |
| 1 daily x 2 d. | |
| Robaxin 750 | 7 hs x 10 days, |
| M.D. Sig: | M.D. Sig: |
| Date: 10/26/06 | Date: |
| @ X-ray c-spine to | No fracture |
| @ Atenolol 50 mg po | daily |
| @ Elavil 50 g | @ Night. If Not |
| M.D. Sig: | M.D. Sig: |

sleeping better p 5 days increase
to 100 mg.
@ percogesic 2 bid. x 5 days

11/10/06 ↑ Elavil to 150g at Night
Ibuprofen 800 bid x 2 wks.

# PROGRESS NOTES

| DATE | NOTES SHOULD BE SIGNED BY PHYSICIAN |
|------|-------------------------------------|

**10/18/06**

Has had Neck pain for about a month.
He fell & hit his head before it
started. Now is real stiff.
Has been on motrin a week & Not
made better.

PE = Neck stiff & tender          NAD
on motion manipulation

A: Neck confusion

Plan → D/c motrin
Prednisone 20mg-
Ī bid x 2 days
Ī ½ bid x 2 days
Ī bid x 2d.
Ī daily x 2d.
Robaxin 750 Ī hs x 10 days.

**10/24/06**

Headaches are getting worse. Hurts worse in
temples. will hurt all day. Has lower back pain
& Neck pain. Not sleeping at night.
What I gave him last week- didn't help
any. PE = BP 146/88

A: HA
HTN               Plan → x-Ray c-spine
Neck pain              Atenolol 50 daily.
Elavil 50 mg at night.

Doctor's Signature: _____

| NAME—Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|-----------|-------|--------|---------------------|------------|----------|

Form 65/2P   © BRIGGS, Des Moines, IA 50306  (800) 247-2343 www.BriggsCorp.com
R404                              PRINTED IN U.S.A.

**PROGRESS NOTES**

# PROGRESS NOTES

Esco, Lee

| DATE | NOTES SHOULD BE SIGNED BY PHYSICIAN |
|------|-------------------------------------|

12/7/06

Neck still pops & cracks. Can't hold his
head up very long. Aches on left side of neck
to left scapula. No arm pain or weakness.
Left shoulder hurts some.
Resting better on days.

PE: S. tender left side of
Neck

A: contusion Neck
Plan → MRI c-spine.

Doctor's Signature: _____

| NAME-Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|-----------|-------|--------|---------------------|-----------|----------|

PROGRESS NOTES


SOUTHERN
HEALTH
PARTNERS

## INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: **10-10-06**   Pod/Location: **D-6**   Cell: **601**   ID# **82582**

Inmate's Full Name: **Lee Eugene Esco**

Complaint/Problem: **Bad Neck Pain**

**This is my second sic slip.**

How long have you had this problem? **Off and On for about a month**

Inmate's Signature: **Lee Esco**                     Date: **10-10-06**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## TO BE COMPLETED BY MEDICAL STAFF:

The Patient's Vital Signs:   Temp **97.6**   Resp **18**   Pulse **65**   B/P **145/94**

Instructions/Assessment: Document your findings, Inmate's responses/actions **c/o of neck pain from a fall he had a month ago. No signs of anything broken or out place, no need for x-ray. See MD order**

Received Orders – thru Treatment Protocols; via telephone order; via verbal order

Follow-Up Required? If checked, date to be seen again _____

Chronic Condition

Inmate to be charged through medical co-pay for this visit

Seen by Medical: **10-10-06**   Seen by: **JE, MTA**

Original form in patient's medical record.



**SOUTHERN**
**HEALTH**
**PARTNERS**

## INMATE SICK CALL SLIP – MEDICAL REQUEST

*TO BE COMPLETED BY INMATE:* Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 10-13-06  Pod/Location: D-6   Cell: 601   ID# 82582

Inmate's Full Name: Lee Eugene Esco

Complaint/Problem: I need to be examined by him (Doctor Nichol) personly about my neck pain. My neck needs to be X-rayed.

How long have you had this problem? over a month

Inmate's Signature: Lee Esco                    Date: 10-13-06

\* \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp_____  Resp_____  Pulse_____  B/P_____

Instructions/Assessment:  Document your findings, Inmate's responses/actions_____

_____

_____  Seen Dr. Nichols

_____      10/19/06

_____      JC,
                                                          MTA

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required?  If checked, date to be seen again_____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical:_____  Seen by:_____

*Place original form in patient's medical record.*

**BRIEFLY STATE THE PROBLEM YOU NEED ASSISTANCE WITH:**
NOTE: If you follow instructions in preparing your request, it can be handled in a timely manner.
Failure to specifically state your request may result in no action being taken.

I need to see Doctor Nichols about my serious neck pain. I was seen by Tina Ellis the MTA on Tuesday Oct. 13, 2006 due to my complaint of having hurt my neck in a fall I took in cell 601 where I a injured myself. Tina examined me by only feeling around on my neck and then she determained that there was nothing wrong with my neck. I am still in severe pain. I need to see Doctor Nichols because my neck needs to be X-rayed

NMATE NAME: Lee Esco

POD ASSIGNMENT: D-6

***** DO NOT WRITE IN THIS SPACE *****

ISPOSITION:

FICER'S SIGNATURE

DATE

TO: _Tina Ellis MTA._  DATE: _10-21-06_

## BRIEFLY STATE THE PROBLEM YOU NEED ASSISTANCE WITH:

NOTE: If you follow instructions in preparing your request, it can be handled in a timely manner.
Failure to specifically state your request may result in no action being taken.

Since the X-rays showed up negative,
Please ~~have~~ have the doctor order an
MRI as soon as possible.

Thank You

INMATE NAME: _Lee Esco_      POD ASSIGNMENT: _D-6_

##### ***** DO NOT WRITE IN THIS SPACE *****

DISPOSITION:

_Gonna talk to doctor_  _JE MTB 10/23/06_

OFFICER'S SIGNATURE _____      DATE _____

**BRIEFLY STATE THE PROBLEM YOU NEED ASSISTANCE WITH:**
NOTE: If you follow instructions in preparing your request, it can be handled in a timely manner.
Failure to specifically state your request may result in no action being taken.

I'm having bad pain in my neck and upper back From where I fell in my cell, for over a month.
I need to go to the hospital to have an MRI taken.
If this facility doesn't want to take care of this, I would like permission for a 24 hour leave to ~~~~~~~~~~~ have this taken care of.
I'll go to my own doctor.
This is causing Bad Headach's

INMATE NAME: _Lee E. Esco_   POD ASSIGNMENT: D-6 cell 601

***** DO NOT WRITE IN THIS SPACE *****

DISPOSITION:
Mr. Esco, I talked to Captain Nixon he said if Dr. Nichols did not refer you to another doctor a order an MRI, that we can not send you. He (Capt. Nixon) said for you to write a letter to your judge about a leave to go to your doctor.

OFFICER'S SIGNATURE _____   DATE 10-24-06
JE, MTA

TO: Tina Ellis, WHA DATE: 10-24-06

**BRIEFLY STATE THE PROBLEM YOU NEED ASSISTANCE WITH:**

NOTE: If you follow instructions in preparing your request, it can be handled in a timely manner.
Failure to specifically state your request may result in no action being taken.

I fell in cell #601 when I tripped over another inmates mat. I fell because the jail is overcroaded and inmates are being forced to sleep on the floor. When I fell I hurt my neck and back I have been in sever pain since my fall. I need to be X-rayed and find out what I have done to myself because I am hurt.

Although I know my injury occurred while I was an inmate in this facility then this facility & the Sheriffs department are responsible for my injuries as this arose while I was in such custody. Still if Southern Health Partners does not want to allow me to have an X-ray then perhaps the Administrators of the jail would allow me a pass to go to the E.R because I am in severe pain! In alternative let me be placed back in community custody so I can see a doctor at the E.R at Baptist Hospital.

Thank You!

INMATE NAME: Lee Esco / Lee Esco          POD ASSIGNMENT: D-6

***** DO NOT WRITE IN THIS SPACE *****

DISPOSITION:

_____

_____

_____

_____

OFFICER'S SIGNATURE _____          DATE _____



# INMATE SICK CALL SLIP – MEDICAL REQUEST

*TO BE COMPLETED BY INMATE:* Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: _10-26-06_  Pod/Location: _D-6_  Cell: _601_  ID# _28528_

Inmate's Full Name: _Lee Eugene Esco_

Complaint/Problem: _neck and back pain from a fall_
_from inside the jail_

How long have you had this problem? _Over a month_

Inmate's Signature: _Lee Esco_      Date: _10-26-06_

\* \* \* \* \* \* \* \* \* \*     \* \* \* \* \* \* \* \* \*     \* \* \* \* \* \* \* \* \*     \* \* \* \* \* \* \* \* \*     \* \* \* \* \* \* \* \* \* \*     \* \* \* \* \* \* \* \* \* \*     \* \* \* \* \* \* \* \* \* \*

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:      Temp_____  Resp_____  Pulse_____  B/P_____

Instructions/Assessment:  Document your findings, Inmate's responses/actions_____

_____

_____

_____

_____

_____

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required?  If checked, date to be seen again_____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical:_____  Seen by:_____

*Place original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

*TO BE COMPLETED BY INMATE:* Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: **11-1-06**  Pod/Location: **D-6**  Cell: **601**  ID# **82582**

Inmate's Full Name: **Lee Eugene Esco**

Complaint/Problem: **I'm still having neck and back pain, the medication is not helping. I need to see a neurologist.**

How long have you had this problem? **almost 2 months**

Inmate's Signature: **Lee Esco**    Date: **11-1-06**

\* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \*

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp_____  Resp_____  Pulse_____  B/P_____

**11/3/06**

Instructions/Assessment: Document your findings, Inmate's responses/actions **Dr. Nichols states he will Review his chart, before approving neurologist visit — M.Oakson**

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order .
☐ Follow-Up Required?  If checked, date to be seen again_____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical:_____    Seen by:_____

*Place original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:**  Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff.  The medical staff will arrange for you to be seen by the appropriate medical staff member.  You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: **11-5-06** Pod/Location: **D-6** Cell: **601** ID# **82582**

Inmate's Full Name: **Lee Eugene Esco**

Complaint/Problem: **I'm still having neck & backpains. I need to see a neurologist, to see what I've done to my neck. My right leg feels numb when I lay down!**

How long have you had this problem? **2 months**

Inmate's Signature: **Lee E Esco**                                    Date: **11-5-06**

* * * * * * * * * *  * * * * * * * * * *  * * * * * * * * * *  * * * * * * * * * *  * * * * * * * * * *  * * * * * * * * * *  * * * * * * * * * *

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:        Temp_____  Resp_____  Pulse_____  B/P_____

Instructions/Assessment:  Document your findings, inmate's responses/actions_____

**Dr. Nichols is gonna review your Chart & give me a decision about this next week. He is gonna get your X-ray report to review.**

**JE, MTA**
**11/6/06**

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required?  If checked, date to be seen again_____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical:_____        Seen by:_____

*Place original form in patient's medical record.*



**SOUTHERN
HEALTH
PARTNERS**

# INMATE SICK CALL SLIP — MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 11-15-06    Pod/Location: D-6    Cell: 601    ID# 82582

Inmate's Full Name: Lee Eugene Esco

Complaint/Problem: My neck and back is still hurting me. It need's more than just medication.

How long have you had this problem? 2 1/2 months

Inmate's Signature: Lee Esco    Date:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp_____    Resp_____    Pulse_____    B/P_____

Instructions/Assessment: Document your findings, Inmate's responses/actions _____

Talked to Dr. Nichols about him and he wrote new script for him —    S Cousannyw

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again_____
☐ Chronic Condition
☑ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical:_____    Seen by:_____

*Place original form in patient's medical record.*



**SOUTHERN
HEALTH
PARTNERS**

## INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 11-27-06  Pod/Location: D-6  Cell: 606  ID# 82582

Inmate's Full Name: Lee Eugene Esco

Complaint/Problem: I need something to be done for my neck + back pain. I need more than medication alone.

How long have you had this problem? almost 3 months

Inmate's Signature: Lee E Esco                   Date: 11-27-06

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp_____  Resp_____  Pulse_____  B/P_____

Instructions/Assessment: Document your findings, inmate's responses/actions  Will put on list to see Dr Nichols as I/m requests - M. Oakson

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required?  If checked, date to be seen again _____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 11/29/06  Seen by: MD

*Place original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP — MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: _Dec. 2 06_   Pod/Location: _D-6_  Cell: _606_   ID# _82582_

Inmate's Full Name: _Lee Eugene Esco_

Complaint/Problem: _I need a tooth pulled. It has been hurting for a few day know._

How long have you had this problem? _a few days_

Inmate's Signature: _Lee Esco_                    Date: _12-2-06_

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

**TO BE COMPLETED BY MEDICAL STAFF:**

Note Patient's Vital Signs:    Temp_____   Resp_____   Pulse_____   B/P_____

Instructions/Assessment: Document your findings, Inmate's responses/actions_____

_I/m just wants to be put on dental list, refuses any meds at this time._

_E, MA_

_12-5-06_

Received Orders – thru Treatment Protocols; via telephone order; via verbal order
Follow-Up Required? If checked, date to be seen again_____
Chronic Condition
Inmate to be charged through medical co-pay for this visit

Date Seen by Medical:_____   Seen by:_____

File original form in patient's medical record.

## SOUTHERN RADIOLOGY SERVICES, LLC
## X-RAY REPORT

| | | | |
|---|---|---|---|
| DATE | LAST NAME | FIRST NAME | MI |
| 10/26/2006 | ESCO | EUGENE | LEE |
| D.O.B. | SEX | FACILITY | |
| 7/27/1970 | M | SHP-AUTAUGA CO JAIL | |
| ORDERING PHYSICIAN | | X-RAY NO. | |
| NICHOLS | | MT10729 | |

### CERVICAL SPINE, TWO VIEWS, 10/26/06

**FINDINGS:** On the cross table lateral view, C1 through the top of C7 are identified with mild straightening of the normal cervical lordosis but no fracture or subluxation. The frontal view is severely overexposed and not of diagnostic quality.

**IMPRESSION:** Normal lateral view of C1 through the top of C7. Apart from mild straightening of the lordosis, this could be secondary to muscular spasm.


**\*\* DICTATED BUT NOT REVIEWED\*\***


_____

John Waldo, M.D./pag




tt:    10/27/2006 9:28:36 AM
td:    10/27/2006 5:42:34 PM

PLEASE PRINT

| PATIENT: | | | | RESPONSIBLE PARTY INFORMATION |
|---|---|---|---|---|
| Last | First | MI | | (MUST BE COMPLETED FOR ALL PATIENTS) |

| DOB: | SEX: | M  F | ROOM #: | NAME: | PHONE #: ( ) |
|---|---|---|---|---|---|
| | | | CODE | | |

| FACILITY: | | ADDRESS: |
|---|---|---|

| PHONE: | FAX: | CITY: | STATE: | ZIP: |
|---|---|---|---|---|

| SS# | | |
|---|---|---|

| MEDICARE #: | | CODE |
|---|---|---|

| MEDICAID #: | | CODE |
|---|---|---|

**PATIENT SIGNATURE:** _____

| INSURANCE: | | CODE |
|---|---|---|

Patient's or Authorized Person's Signature. I authorized the release of any medical or other information necessary to process this claim. I request payment of government/insurance benefits be made to the provider performing services.

| INSURANCE #: | | PRE CERTIFICATION # |
|---|---|---|

☐ Patient Unable to Sign

**EXAMS REQUESTED: Please Mark Each Clearly**

**X-RAY EXAMS**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 74000 | Abdomen, 1 View | 73520 | Hip, Min 2 Views w/Pelvis  L  R | 73590 | Tibia/Fibula, 2 Views  L  R |
| 73600 | Ankle, 2 Views (AP 7 LAT)  L  R | 73510 | Hip, Comp Min 2 Views  L  R | 73100 | Wrist, 2 Views  L  R |
| 73610 | Ankle, Comp Min 3 Views  L  R | 73060 | Humerus, Min 2 Views  L  R | 73110 | Wrist, Min 3 Views  L  R |
| 73650 | Calcaneus (Heel), 2 Views  L  R | 73560 | Knee, 2 Views  L  R | | OTHER |
| 71010 | Chest, 1 View (AP) | 73562 | Knee, 3 Views (inc OBLQ)  L  R | | OTHER EXAMS  L  R |
| | | 70160 | Nasal Bones, Comp Min 3 Views | | |
| 71111 | Chest With Ribs, 4 Views | 72170 | Pelvis, 1 Views | | |
| 73000 | Clavicle, Complete  L  R | 71100 | Ribs, 2 Views  L  R | 93000 | EKG  Pacemaker:  Y  N |
| 73070 | ELbow, 2 Views  L  R | 72220 | Sacrum/Coccyx, Min 2 Views | 95819 | EEG |
| 73080 | Elbow, Comp 3 Views  L  R | 73030 | Shoulder, Min 2 Views  L  R | | |
| 73550 | Femur, 2 Views  L  R | 70210 | Sinuses, Less Than 3 Views | | |
| 73620 | Foot, 2 Views  L  R | | | | |
| 73630 | Foot, Comp Min 3 Views  L  R | 72050 | Skull, Less Than 4 Views | | |
| 73090 | Forearm, 2 Views  L  R | 72040  X | Spine, Cervical 2 Views | | |
| 73120 | Hand, 2 Views  L  R | 72100 | Spine, Lumbosacral 2 Views | | |
| 73130 | Hand, Min 3 Views  L  R | 72070 | Spine, Thoracic 2 Views | | |

**DIAGNOSIS/SYMPTOM(S):  Please Mark ALL that apply**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 787.3 | Abdomen Distention (Flatulence) | 496 | COPD, Chronic Obstructive Pulm. Dis. | 560.9 | Obstruction, Intestinal |
| 787.5 | Abnormal Bowel Sounds | 786.2 | Coughing | X | Pain in _____ |
| 413.0 | Angina | | Dislocation of _____ | 485 | Pneumonia, Confirmed |
| | Arthritis of | 780.4 | Dizziness | 514 | Pneumonia, Probable |
| 429.2 | ASCVD, Arteriosclerotic cardiovas. Dis. | 787.2 | Dysphagia (Difficulty Swallowing | 795.5 | Positive Mantoux, PPD |
| 427.31 | Atrial Fibrillation | 782.3 | Edema (Swelling) | 518.4 | Pulmonary Edema, NOS |
| 507.0 | Aspiration | 492.0 | Emphysema | 515 | Pulmonary Fibrosis |
| 427.89 | Bradycardia | 780.6 | Febrile (Feverish) | 786.7 | Rales in Chest |
| | Bruise of | | Possible Fracture of _____ | 786.09 | Shortness of Breath |
| 466.0 | Bronchitis, NOS | 560.39 | Impaction | 780.2 | Syncope & Collapse |
| | Carcinoma of | 518.3 | Infiltrate, Lung | 785.0 | Tachycardia |
| 429.3 | Cardiomegaly | 410.92 | Myocardial Infarction | 011.90 | Tuberculosis |
| 786.50 | Chest Pain, Unspecified | 787.01 | Nausea and Vomiting | 519.8 | URI (Chronic) |
| 514 | Congestion, Chest | | | | |
| 428.0 | Congestive Heart Failure | | | | OTHER _____ |

| PHYSICIAN'S SIGNATURE: | NURSE'S SIGNATURE: | | X-RAY # | TECH: |
|---|---|---|---|---|
| Because of physical psychological and/or age limitations, this patient would find it difficult to receive this/these procedure(s) at a fixed site. I certify that this/these procedure(s) is/are medically necessary for the proper treatment of this patient. | ORDERING PHYSICIAN: | CODE | DATE: 10.26.06 | #VIEWS: 2 |
| | First  Last | | | |
| | PHONE #: ( ) | | ARRIVE TIME: 12:36 | Q0092 # 1 |
| RADIOLOGIST: | FAX: ( ) | | DEPART TIME: | # PTS SEEN  2 |
| PRELIMINARY REPORT: | | | | |
| | | | | AM |
| | | | TIME: | PM |

## What is Tuberculosis:

Tuberculosis ("TB") is a serious, infectious (transmitted through the air) disease that most commonly affects the lungs. In the lungs, the bacteria destroys elastic lung tissues and is replaced with fibrous connective tissues. The general symptoms of active TB are often subtle, unnoticeable and may include: Fatigue; Weight Loss; Fever; Chills; and Night Sweats. Symptoms of TB in the lungs may include: a persistent cough; chest pain; and coughing up blood. Although TB is preventable and can be cured with proper medication, 5% to 10% of those with active TB will die from the disease. This is usually due to patients not taking their medications correctly or improper drug treatment. TB is usually diagnosed through the use of the Mantoux tuberculin skin test. In this test, a dose of purified protein derived from the Tubercle bacilli, which is non-infectious, is injected into the upper layer of skin on the inside of the forearm. Forty-eight to 72 hours after the injection, the test site is examined. In most cases a hardened area of tissue 10 millimeters or larger is considered an indication of infection with TB, but it is not necessarily an indication of having active TB. Chest x-rays and sputum smears and cultures are used to test for active TB.

There are several high risk groups in the US that are known to have a high rate of TB. They include:

- The homeless;
- Alcoholics;
- The elderly;
- IV drug users
- Prison inmates
- Persons with HIV infections/AIDS

## Screening:

Upon consent, all new inmates who are processed into jail, without written proof of receiving TB testing in the past year, will receive purified protein derivative (PPD) during the health screening. A nurse will read the PPD forty-eight (48) to seventy-two (72) hours afterwards and document the results in the patient's medical file. The patient will be instructed during the health screening to the necessity of follow-up medical care, the results (both positive or negative) and treatment which may be necessary.

## Treatment:

During the screening, if a patient states he/she is past positive, we will not plant PPD, but will obtain a chest x-ray to see if the tuberculosis is active. When a nurse reads a positive PPD, a chest x-ray will be ordered as per physician protocol. The patient will receive information regarding the test results, symptoms of TB, proposed treatment, and follow-up care, etc.

Should the chest x-ray suggest active TB, the local Health Department, SHP Medical Team Administrator, and SHP corporate office should be notified immediately. Initiating therapy/treatment should begin under the recommendations of the local Health Department and in conjunction with the jail physician. The jail will immediately segregate the patient from general population. All people who have come in contact with the patient will have a skin test. The patient will have restricted movement and visitors in the jail, and will be required to wear a mask at all times during contact with staff and/or other persons, until subsequent tests prove no longer infectious.

All new inmates who are processed into the jail, who are on treatment and deemed not infectious will be housed in general population. If a patient is released from jail during therapy, the local Health Department will be notified and provided with the patient's release location and/or the patient's last known address.

## Consent for Testing/Treatment:

I hereby give my consent for TB testing and/or treatment, if needed. I have read and understand the above information regarding testing and treatment procedures.

Signature: _____     Date: 6/21/06

Witness: _____ J. Ellis, MTA, LPN     Date: 6/21/06

Confidential Medical Information

| Problems | Yes | No | Problems | Yes | No | Problems | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Vision | | | Hypertension | | | Gonorrhea | | |
| Hearing | | | Anemia | | | Syphilis | | |
| Balance/Dizziness | | | Blood | | | Muscle Problem | | |
| Blackouts | | | Stomach Pain | | | Joint Problem | | |
| DT's | | | Heartburn | | | Arthritis | | |
| Headaches | | | Ulcer | | | Comments | | |
| Seizures | | | Nausea/Vomiting | | | | | |
| Nervous Disorder | | | Gall Bladder | | | Regular Menstrual Period | | |
| Throat | | | Liver | | | Irregular Menstrual Period | | |
| Teeth | | | Hepatitis | | | # of days Menstrual Period | | |
| Asthma | | | Diabetes | | | LMP | N/A | |
| Hay Fever | | | Kidney Disease | | | Gravida/Para | | |
| Pneumonia | | | Bladder Infection | | | Last Pap | | |
| Tuberculosis | | | Trouble Volding | | | Contraception | | |
| Heart | | | Pediculi (lice) | | | Other | | |

Additional Notes: _____

## EXAM:

Age 35   Sex M   Race W   Ht. 5' 10"   Wt. 166

BP 157/91   Pulse 72   Resp 18   Temp 98.0

| Area/Type | N | A/Comment | Area/Type | N | A/Comment |
|---|---|---|---|---|---|
| Skin: Color, Condition, Turgor, Recent inj. | N | tattoo - (L) arm (L) Chest | Chest (Breasts): Configuration, Auscultation, Respirations, Cough/Sputum | N | |
| Head: Glasses, Pupils, Sclera, Conjunctiva, Vision | N | | Heart: Auscultation, Radial pulses, Apical pulse, Rhythm | N | |
| Ears: Appearance, Canals, Hearing | N | | Extremities: Pulses, Edema, Joints | N | |
| Mouth: Teeth/Gums, Dentures, Plates, Throat, Tongue, Tonsils | N | cavity fell out | Abdomen: Shape, Palpation, Hernia, Bowel Sounds | N | Hx of hernia |
| Nose | | | Spine | N | |
| Neck: Veins, Mobility, Thyroid, Carotids, Lymph nodes | N | | Genital/Urinary System | N | |

## LABORATORY TESTS

| | Date & Initial | Results |
|---|---|---|
| Was PPD planted and read timely? Yes or No | 6/21/06 | |
| VDRL / RPR | | |
| Other Lab Tests needed: | | |
| Pregnancy Test? | | |

## MENTAL HEALTH OBSERVATIO

| | N | A/Comm |
|---|---|---|
| Orientation (person, place, time). | N | |
| General appearance (motor behavior, mannerisms | N | |
| Affect (mood) | N | |
| Content of thought, history of suicide, present thoughts of suicide | N | |

Physical Examiner's Signature: T. Ellis, MTA   Date: 6/21/06

Physician's Signature: _____   Date: 6/23/06

Southern Health Partners, Inc.

## ADMISSION DATA     HISTORY AND PHYSICAL FORM

Intake Date: 6/07/06                    Exam Date: 6/21/06                    S.S.#: 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

Inmate Name: ESCO                       Eugene                     Lee                    Date Booked: 6/07/06
                        (Last)                (First)              (Middle)
Alias: _____                                                           County: Autauga,
                        (Last)                (First)              (Middle)
Address: 143 Nobles Rd.          Flatwood          AL
                        (Street)              (City)               (State)              (Zip)
Telephone: 334-869-2041          Birthdate: 7/27/70               Religion: _____

Education Completed: 11                      Special Education: _____

Marital Status: (S)  M  W  D  Separated     Read/Write English: (YES)  NO  Other: _____

Previous Incarcerations: (Facility/Date) Elmore, Autauga 2004

## MEDICAL HISTORY

Notify In Emergency: Brandy Davis                                            Fiancee
                        (Name)                                               (Relationship)
Address: Same                                                    Phone: Same
                        (Street)              (City)               (State)              (Zip)
Health Insurance: NO
                        (Type of Insurance)                (State)                (Policy Number)
Family Physician: NO
                        (Name)                (Street Address)     (City)     (State)  (Zip)   (Phone Number)

Past Hospitalizations (Include surgeries): Hernia, 2000
_____
                        (Location)            (Street Address)     (City)     (State)         (Zip)
Head Injury with Loss of Consciousness: NO          Last Tetanus: UNKNOWN    Immunization: _____
                        N
Allergies: NKA

Current Medication(s): None

## MENTAL HEALTH EVALUATION

Hospitalization for Mental Health Reasons:     YES  (NO)  If Yes, Why: _____
Where: _____                                              When: _____
                        (Location)            (Street Address)     (City)     (State)  (Zip)                    (Date)
Psychotropic Meds (Specify type and last dose): NO
Prior Counseling/Out-Patient Treatment for: NO
Where: _____                                              When: _____
                        (Location)            (Street Address)     (City)                                      (Date)
Have you ever attempted suicide: NO    How: _____                          (Date)
Have you recently considered committing suicide? NO
Have you ever been arrested for a violent crime/sexual offense? (Specify) NO
                                                                                  (Type)          (Date)
Street drugs: Meth  quit Nov. 11, 2005    Smoker: Yes Etoh: NO
                        (Type-Quantity)       (How Often)  (How Long)              (Type-Quantity)   (How Often) (How Long)

                                                                           Date: 6/21/06
Inmate's Signature: X  Lee Esco                                           Date: 6/21/06
Interviewer's Signature: D. Ellis, MTA                                    Date _____
Witness: (If physical is refused): _____

```
06/08/06                        AUTAUGA COUNTY METRO JAIL                              559
07:53                           Inmate Medical History:                      Page:      1

        Booking Number:     35891      Confined                            Active
        Name Number:        82582      LEE EUGENE ESCO
  Doctor:                                                 Phone: (    )   --
Address:
Sex Prf:          Diet: NO DIET
             Allergies: N   Respiratory Problems: N      High Blood Pressure: N
        Heart Problems: N            Hemophilia: N               Tuberculosis: N
             Diabetes: N               Pregnant: N         Recently Pregnant: N
        Birth Control: N        Dental Problems: N                 Alcoholism: N
       Drug Dependency: N         Kidney Disease: N              Liver Disease: N
             Suicidal: N               Epilepsy: N                  Hepatitis: N
                 AIDS: N        Venereal Disease: N        Recent Head Injury: N
             Seizures: N         Traumatic Injury: N        Psychiatric Care: N
                      :                          :                          :
                      :                          :                          :
                      :                          :                          :
                      :                          :                          :
                      :                          :                          :
                      :                          :                          :
                      :                          :                          :

History: (None)
  Notes:


= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =
```

SOUTHERN
HEALTH
PARTNERS

# TB SKIN TEST VERIFICATION FORM

Prior to administering the TB skin test, please complete the information below. After administering the TB skin test, place this form in a central location for the test to be read within 72 hours. Once all information has been completed, file this completed form in the patient's medical record.

Inmate Name: _D Lee Esco_    Cell # _P004_

SS# _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_    DOB _7/27/70_    (Male) or Female

Date of TB Skin test: _6/21/06_    Done by Nurse: _J. Ellis, MTA_

Previous Positive: YES or (NO)    Previous Therapy: YES or (NO)

### TEST TO BE READ WITHIN 72 HOURS – COMPLETE BELOW INFORMATION:

Date TB Skin test was read: _6/23/06_    Done by Nurse: _J. Ellis_

Number mm: _0_    Referral for Chest X-ray: YES or (NO) If yes, Date of CXR: _____

Comments: _____

DEC-8-2006  10:26A FROM:AUTAUGA CTY JAIL    256                    TO:12565339322        P.3

## MEDICATION ADMINISTRATION RECORD

QS/1 PHARMACY SYSTEM FORM AO3-MIO

| MEDICATIONS | HOUR | | | |
|---|---|---|---|---|
| Ⓡ IBU 800 mg. ÷ BID x 2 wks  10/10/06 | am | | | |
| | pm | | | |
| Prednisone 20 mg. ÷ BID x 2 days  1½ BID x 2 days  ordered 10/20/06 | am | | | |
| | pm | | | |
| ÷ BID x 2 days  ÷ q. day x 2 days  ordered 10/23/06 | am | | | |
| | pm | | | |
| Robaxin 750 mg.  q. pm. x 10 days  ordered 10/25/06 | pm | | | |
| Atenolol 50 mg P.O. daily  10/31/06 | pm | | | |
| Elavil 50 mg @ Night if not sleeping better ↑ to 100 mg | pm | | | |
| Perogesic ÷ Bid x 5 days | Am | | | |
| | P.m. | | | |

| | | |
|---|---|---|
| CHARTING FOR | 10-10-06 | THROUGH 10-31-06 |
| PHYSICIAN Nichols | | TELEPHONE NO. | MED. RECORD NO. |
| ALT. PHY. | | ALT. TELEPHONE | |
| ALLERGIES | | REHABILITATIVE POTENTIAL | |
| DIAGNOSIS | | | ADMISSION DATE |
| MEDICAID NUMBER | MEDICARE NUMBER | COMPLETE ENTRIES CHECKED BY: | TITLE: |
| PATIENT Esco, Lee | SEX M | DATE OF BIRTH 2-27-70 | PATIENT CODE | ROOM NO. 6POD | BED | FACILITY CODE |

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Atenolol 50mg q. pm | pm | | | | | | | | | | | | | | | | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| Elavil 50 mg. q. pm  ↑to 100 mg 11/7/06 | pm | | | | | | | | | | | | | | | | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| Elavil 150mg @ night | pm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Ibu 800 mg Bid x 2 weeks    11/16/06 | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | pm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

CHARTING FOR: 11-1-06    THROUGH: 11-30-06

Physician: Nichols

Alt. Physician:

Allergies: NKA

Telephone No.:

Alt. Telephone:

Rehabilitative Potential:

Medical Record No.:

Diagnosis:

Medicaid Number:    Medicare Number:

Approved By Doctor:

By:    Title:    Date:

RESIDENT: Esco, Lee    D.O.B. 7-27-70    Sex: M    Room #: 6POD    Patient Code:    Admission Date:

DEC-8-2006  10:24A FROM:AUTAUGA CTY JAIL    256                    TO:12565339322    P.1

AUTAUGA CO JAIL
ESCO, LEE
REPORT DATE : 12/06

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATENOLOL 50 MG TABLET | 10/27/07 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| TENORMIN 50 MG TABLET | 0800 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| TAKE 1 TABLET ONCE DAILY | pm | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| AMITRIPTYLINE HCL 150 MG | 11/17/07 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ELAVIL 150 MG TABLET | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| TAKE 1 TABLET IN THE | pm | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| EVENING | 1700 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| AMITRIPTYLINE HCL 50 MG | 10/27/07 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ELAVIL 50MG TABLET | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| TAKE 1 TABLET AT BEDTIME | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | 2100 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

REORDER FROM INTEGRAL SOLUTIONS GROUP • 1-800-225-0797   FORM #-00   STOCK #-00R-05

| CHARTING FOR | 12/01/06 | THROUGH | 12/31/06 | PAGE | 1 OF | 1 | |
|---|---|---|---|---|---|---|---|
| Physician | NICHOLS, KEN | | | Telephone No. | | | Medical Record No. |
| Alt. Physician | NICHOLS, KEN | | | Alt. Telephone | | | |
| Allergies | NKA | | | Rehabilitative Potential | | | |

Diagnosis

| Medicaid Number | Medicare Number | Approved By Doctor: | | | |
|---|---|---|---|---|---|
| | | By: | | Title: | Date: |
| RESIDENT | ESCO, LEE | D.O.B. 07/27/1970 | Sex | Room # J | Patient Code ESCOLEE | Admission Date 10/20/06 |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LEE EUGENE ESKO,                          )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )      CIVIL ACTION NO. 2:06-CV-969-WKW
                                          )
DOCTOR KENNETH NICHOLS, *et al.*,         )
                                          )
            Defendants.                   )

## AFFIDAVIT OF SANDRA CORSON, LPN

Before me, the undersigned notary public, in and for said County and State, personally appeared **Sandra Corson, LPN**, who, after first being duly sworn by me, deposes and states as follows:

1.     My name is Sandra Corson, LPN. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2.     I obtained my LPN degree from George Wallace Community College in Selma, Alabama in 1995. I was employed as an LPN by Baptist Medical Center and Vaughn Regional Hospital in Selma, Alabama for approximately three years. I next worked at Baptist Nursing Home in Prattville, Alabama for four years. From November 2002 through August 2006, I was employed as an LPN at the Dallas County Jail. Since August 2006, I have been employed by Southern Health Partners, Inc. ("SHP") as an LPN at the Autauga County Jail.

3.     SHP provides medical care to inmates in various jail facilities, including the Autauga County Jail. Health care services have been provided to inmates by SHP pursuant to a contract between SHP and the Autauga County Commission. Health care in the jail is provided under the

direction of an MTA as well as a medical director. During the period complained of by the plaintiff in this action, Dr. Kenneth Nichols ("Dr. Nichols") was the medical director in the jail and Tina Ellis, LPN was the MTA.

4.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

5.      As I understand the plaintiff's Complaint, the plaintiff alleges that SHP, Dr. Nichols, Tina Ellis and myself were deliberately indifferent to the plaintiff's complaints of neck and back pain arising out of a fall he suffered in his jail cell.

6.      I have reviewed SHP's entire medical chart on the plaintiff,.

7.      On June 7, 2006, the plaintiff was booked into the Autauga County Jail. On June 21, 2006, Tina Ellis performed a history and physical upon the plaintiff, noting no major medical problems.

8.      On October 10, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of bad neck pain. He also stated that "this is my second sic slip." On the same date, Tina Ellis saw the plaintiff and noted that he complained of neck pain from a fall he had a month ago. She saw no signs of anything broken or out of place and did not believe that an x-ray was indicated. Dr. Nichols ordered that the plaintiff receive ibuprofen 800 mgs. twice a day for two weeks pursuant to his treatment protocol. Upon my review of the chart, the plaintiff's October 10, 2006 inmate sick call slip is the first sick call slip that the plaintiff completed while incarcerated at the Autauga County Jail, and the medical staff had no notice of any back or neck problems by the plaintiff until receipt of same.

9.    On October 13, 2006, the plaintiff completed an inmate sick call slip, wherein he stated that he needed to be examined by Dr. Nichols about his neck pain and asserted that his neck needed to be x-rayed. On the same date, we received a grievance form from the plaintiff wherein he stated that he needed to see Dr. Nichols about his neck pain. In response to the plaintiff's complaints, Dr. Nichols saw the plaintiff on October 18, 2006. Dr. Nichols noted that the plaintiff complained of having neck pain for about a month due to a fall in his jail cell. The plaintiff complained that his neck was stiff and that he had been on Motrin (ibuprofen) for about a week and that his pain was not improved. Dr. Nichols' examination revealed that the plaintiff's neck was stiff and tender on manipulation and he assessed the plaintiff with a neck contusion. Dr. Nichols discontinued the plaintiff's prescription for Motrin (ibuprofen), and ordered that the plaintiff receive Prednisone and Robaxin for his complaints of pain. Robaxin is a muscle relaxer.

10.    On October 21, 2006, the medical staff received a grievance by the plaintiff, wherein he complained of having pain in his neck and upper back and asserted that he needed to go to the hospital to have an MRI. He also stated that if the jail did not want to order the MRI, he would like permission for a 24 hour leave to see his own doctor. On October 24, 2006, Tina Ellis responded to the plaintiff's grievance, stating that she had talked to Captain Nixon, who told her that Dr. Nichols would need to either refer the plaintiff to another doctor or order an MRI. Captain Nixon also told Nurse Ellis to inform the plaintiff that he could write a letter to the judge requesting leave to go see his own doctor.

11.    On October 24, 2006, the medical staff received a grievance from the plaintiff, wherein he described the neck and back pain that he had experienced as a result of his fall in his jail cell and asked for an x-ray.

12.    On October 26, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain from his fall. On the same date, the plaintiff was seen by Dr. Nichols, who noted that the plaintiff complained that his headaches were getting worse and that they hurt worse in the temples. The plaintiff complained of lower back and neck pain. He also complained that he was not sleeping at night and that his current medications of Prednisone and Robaxin were not working. The plaintiff's blood pressure was checked, and it read 166/88. Dr. Nichols' assessment was headache, hypertension and neck pain. Dr. Nichols ordered that the plaintiff receive an x-ray of his C spine and that he receive Elavil at night to help him sleep and Atenolol for his high blood pressure. Dr. Nichols also ordered that the plaintiff receive Percogesic for five days for his pain.

13.    On October 26, 2006, the plaintiff received an x-ray of his cervical spine, which was interpreted by Dr. John Waldo. Dr. Waldo noted that the plaintiff had a normal lateral view of C1 through the top of C7. The x-ray was unremarkable other than Dr. Waldo noticing a mild straightening of the lordosis, which Dr. Waldo said could be secondary to muscular spasm.

14.    On October 26, 2006, the medical staff received a grievance from the plaintiff wherein he stated that "since the x-ray showed up negative, please have the doctor order an MRI as soon as possible." On October 28, 2006, Nurse Ellis reviewed this grievance form and referenced that she would speak to Dr. Nichols about same.

15.    On November 1, 2006, the plaintiff completed an inmate sick call slip, complaining that he was still experiencing neck and back pain and that his medication was not helping. Marlo Oaks, RN saw the plaintiff on November 3, 2006, noting that Dr. Nichols had stated that he would review the plaintiff's chart before approving a neurologist visit.

16.    On November 5, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain and stating that he needed to see a neurologist. He claimed that his right leg

felt numb when he lay down. On November 6, 2006, Nurse Ellis saw the plaintiff, noting that Dr. Nichols would review the plaintiff's chart and provide a decision based on the plaintiff's prior x-ray.

17.     On November 15, 2006, the plaintiff completed an inmate sick call slip, claiming that his back and neck were hurting and that he needed more than just medication. I saw the plaintiff and noted that Dr. Nichols had written a new prescription, increasing the plaintiff's Elavil dosage and prescribing ibuprofen 800 mgs. twice a day for two weeks.

18.     On November 27, 2006, the plaintiff completed an inmate sick call slip, complaining that something needed to be done for his neck and back pain. The plaintiff was seen by Marlo Oaks on November 29, 2006, and placed on the list to see Dr. Nichols.

19.     On December 2, 2006, the plaintiff complained that he needed a tooth pulled. On December 5, 2006, Nurse Ellis saw the plaintiff, noting that the plaintiff wanted to be placed on the inmate dental list, which was done.

20.     On December 7, 2006, Dr. Nichols saw the plaintiff. The plaintiff complained that his neck still pops and cracks and that he cannot hold his head up very long. The plaintiff stated that his left shoulder hurt some and that he was resting better on the Elavil. Dr. Nichols' physical assessment was that the plaintiff's neck was tender on the left side. Dr. Nichols assessed the plaintiff with a contusion of the neck and his plan included an order for an MRI C-spine.

21.     The plaintiff's medication administration record reflects that the plaintiff received all medication ordered for pain.

22.     Based upon my review of the plaintiff's records, my treatment of the plaintiff and my education and training, it is my medical opinion that the plaintiff received appropriate nursing care for his complaints of back and neck pain.

23.    All necessary care provided to the plaintiff by me and the SHP medical staff was appropriate, timely and within the standard of care.

24.    On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

*Sandra Corson LPN*
Sandra Corson, LPN  *ALDL 3417189*


STATE OF ALABAMA            )
                           )
COUNTY OF *Autauga*         )

I, the undersigned Notary Public in and for said county in said state, hereby certify that Sandra Corson, LPN, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

GIVEN UNDER MY HAND and official seal on this the *11* day of *Dec*, 2006.

*Gladys Hunter*
Notary Public
My Commission Expires: _____

My Commission Expires November 20, 2010

[yr] \\LFSPSQL\CPShare\CPWin\HISTORY\061114_0001\17404.1C



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LEE EUGENE ESKO,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )    CIVIL ACTION NO. 2:06-CV-969-WKW
                                    )
DOCTOR KENNETH NICHOLS, *et al.,*   )
                                    )
        Defendants.                 )

## AFFIDAVIT OF KENNETH NICHOLS, M.D.

Before me, the undersigned notary public, in and for said County and State, personally

appeared **Kenneth Nichols, M.D.**, who, after first being duly sworn by me, deposes and states as

follows:

1.      My name is Kenneth Nichols, M.D. I am over the age of 19 years and have personal

knowledge of the facts contained herein.

2.      I obtained my medical degree from UAB in 1982. From 1982 to 1985, I performed

an internal medicine internship and residency at Baptist Memorial Hospital in Memphis, Tennessee.

From July 1985 to the present, I have been in private practice in internal medicine in Prattville,

Alabama. I am licensed by the State of Alabama as a medical doctor and have been so since 1985.

Since 1997, I have been the medical director of the Autauga County Jail. Since November 2005,

I have been employed by Southern Health Partners, Inc. ("SHP") to be the medical director of the

Autauga County Jail.

3.      SHP provides medical care to inmates in various jail facilities, including the Autauga

County Jail. Health care services have been provided to inmates by SHP pursuant to a contract

between SHP and the Autauga County Commission. Health care in the jail is provided under the

direction of an MTA as well as a medical director. During the period complained of by the plaintiff in this action, I was the medical director in the jail and Tina Ellis, LPN ("Nurse Ellis") was the MTA.

4.    When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

5.    As I understand the plaintiff's Complaint, the plaintiff alleges that SHP, Tina Ellis, Sandra Corson and myself were deliberately indifferent to the plaintiff's complaints of neck and back pain arising out of a fall he suffered in his jail cell.

6.    I have reviewed SHP's entire medical chart on the plaintiff.

7.    On June 7, 2006, the plaintiff was booked into the Autauga County Jail. On June 21, 2006, Nurse Ellis performed a history and physical upon the plaintiff, noting no major medical problems.

8.    On October 10, 2006, the plaintiff completed an inmate sick call slip, wherein he complained of bad neck pain. He also stated that "this is my second sic slip." On the same date, Nurse Ellis saw the plaintiff and noted that he complained of neck pain from a fall he had a month ago. She saw no signs of anything broken or out of place and did not believe that an x-ray was indicated. I ordered that the plaintiff receive ibuprofen 800 mgs. twice a day for two weeks pursuant to his treatment protocol. Upon my review of the chart, the plaintiff's October 10, 2006 inmate sick call slip is the first sick call slip that the plaintiff completed while incarcerated at the Autauga County Jail, and the medical staff had no notice of any back or neck problems by the plaintiff until receipt of same.

9.    On October 13, 2006, the plaintiff completed an inmate sick call slip, wherein he stated that he needed to be examined by me about his neck pain and asserted that his neck needed

to be x-rayed. On the same date, we received a grievance form from the plaintiff wherein he stated that he needed to see me about his neck pain. In response to the plaintiff's complaints, I saw the plaintiff on October 18, 2006. I noted that the plaintiff complained of having neck pain for about a month due to a fall in his jail cell. The plaintiff complained that his neck was stiff and that he had been on Motrin (ibuprofen) for about a week and that his pain was not improved. My examination revealed that the plaintiff's neck was stiff and tender on manipulation and I assessed the plaintiff with a neck contusion. I discontinued the plaintiff's prescription for Motrin (ibuprofen), and ordered that the plaintiff receive Prednisone and Robaxin for his complaints of pain. Robaxin is a muscle relaxer.

10.    On October 21, 2006, the medical staff received a grievance by the plaintiff, wherein he complained of having pain in his neck and upper back and asserted that he needed to go to the hospital to have an MRI. He also stated that if the jail did not want to order the MRI, he would like permission for a 24 hour leave to see his own doctor. On October 24, 2006, Nurse Ellis responded to the plaintiff's grievance, stating that she had talked to Captain Nixon, who told her that I would need to either refer the plaintiff to another doctor or order an MRI. Captain Nixon also told Nurse Ellis to inform the plaintiff that he could write a letter to the judge requesting leave to go see his own doctor.

11.    On October 24, 2006, the medical staff received a grievance from the plaintiff, wherein he described the neck and back pain that he had experienced as a result of his fall in his jail cell and asked for an x-ray.

12.    On October 26, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain from his fall. On the same date, the plaintiff was seen by me, and I noted that the plaintiff complained that his headaches were getting worse and that they hurt worse in the

temples. The plaintiff complained of lower back and neck pain. He also complained that he was not sleeping at night and that his current medications of Prednisone and Robaxin were not working. The plaintiff's blood pressure was checked, and it read 166/88. My assessment was headache, hypertension and neck pain. I ordered that the plaintiff receive an x-ray of his C spine and that he receive Elavil at night to help him sleep and Atenolol for his high blood pressure. I also ordered that the plaintiff receive Percogesic for five days for his pain.

13.    On October 26, 2006, the plaintiff received an x-ray of his cervical spine, which was interpreted by Dr. John Waldo. Dr. Waldo noted that the plaintiff had a normal lateral view of C1 through the top of C7. The x-ray was unremarkable other than Dr. Waldo noticing a mild straightening of the lordosis, which Dr. Waldo said could be secondary to muscular spasm.

14.    On October 26, 2006, the medical staff received a grievance from the plaintiff wherein he stated that "since the x-ray showed up negative, please have the doctor order an MRI as soon as possible." On October 28, 2006, Nurse Ellis reviewed this grievance form and referenced that she would speak to me about same.

15.    On November 1, 2006, the plaintiff completed an inmate sick call slip, complaining that he was still experiencing neck and back pain and that his medication was not helping. Marlo Oaks, RN saw the plaintiff on November 3, 2006, noting that I had stated that I would review the plaintiff's chart before approving a neurologist visit.

16.    On November 5, 2006, the plaintiff completed an inmate sick call slip, complaining of neck and back pain and stating that he needed to see a neurologist. He claimed that his right leg felt numb when he lay down. On November 6, 2006, Nurse Ellis saw the plaintiff, noting that I would review the plaintiff's chart and provide a decision based on the plaintiff's prior x-ray.

17.   On November 15, 2006, the plaintiff completed an inmate sick call slip, claiming that his back and neck were hurting and that he needed more than just medication. Sandra Corson, LPN saw the plaintiff and noted that I had written a new prescription, increasing the plaintiff's Elavil dosage and prescribing ibuprofen 800 mgs. twice a day for two weeks.

18.   On November 27, 2006, the plaintiff completed an inmate sick call slip, complaining that something needed to be done for his neck and back pain. The plaintiff was seen by Marlo Oaks on November 29, 2006, and placed on the list to see me.

19.   On December 2, 2006, the plaintiff complained that he needed a tooth pulled. On December 5, 2006, Nurse Ellis saw the plaintiff, noting that the plaintiff wanted to be placed on the inmate dental list, which was done.

20.   On December 7, 2006, I saw the plaintiff. The plaintiff complained that his neck still pops and cracks and that he cannot hold his head up very long. The plaintiff stated that his left shoulder hurt some and that he was resting better on the Elavil. My physical assessment was that the plaintiff's neck was tender on the left side. I assessed the plaintiff with a contusion of the neck and my plan included an order for an MRI C-spine.

21.   The plaintiff's medication administration record reflects that the plaintiff received all medication ordered for pain.

22.   Based upon my review of the plaintiff's records, my treatment of the plaintiff and my education and training, it is my medical opinion that the plaintiff received appropriate medical care for his complaints of back and neck pain.

23.   All necessary care provided to the plaintiff by me and the SHP medical staff was appropriate, timely and within the standard of care.

24.   On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_Kenneth N. Nichols M.D_
Kenneth Nichols, M.D.

STATE OF ALABAMA          )
                          )
COUNTY OF ___Autauga___   )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Kenneth Nichols, M.D. whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the __4__ day of __December__, 2006.

_Robert N. July_
Notary Public
My Commission Expires: ___12-3-2007___